AARON SMITH, )
)
Plaintiff, )
)
v. ) No.: 3:25-CV-195-KAC-JEM
)
MICHAEL WEBB, )
)
Defendant. )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Aaron Smith, a pro se prisoner formerly incarcerated in the Claiborne County Jail, filed (1) a Complaint under 42 U.S.C. §1983 [Doc. 1] that contains a request for the appointment of counsel; (2) a motion to proceed *in forma pauperis* [Doc. 4]; and (3) a motion seeking to correct a misidentification in the Complaint [Doc. 7]. For the reasons below, the Court (1) **GRANTS** the motion to proceed *in forma pauperis* [Doc. 4]; (2) **DENIES** the request for appointed Counsel; (3) **GRANTS** the motion seeking to correct a misidentification in the Complaint [Doc. 7]; and (4) allows Plaintiff's excessive force claim against Defendant Michael Webb in his individual capacity to **PROCEED** but **DISMISSES** all remaining claims.

**I.     MOTION TO PROCEED *IN FORMA PAUPERIS* [Doc. 4]**

Under the Prison Litigation Reform Act ("PLRA"), a prisoner who brings a civil action may apply for permission to file suit without prepaying the filing fee. *See* 28 U.S.C. § 1915(a). Review of the certification of Plaintiff's inmate trust account shows that he lacks sufficient financial resources to pay the filing fee in a lump sum [*See* Doc. 4]. Accordingly, pursuant to 28 U.S.C. § 1915, the Court **GRANTS** the motion to proceed *in forma pauperis* [*Id.*].

Plaintiff is **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account **SHALL** submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130,

Knoxville, Tennessee, 37902 as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the filing of the Complaint. 28 U.S.C. § 1915(b) (1)(A), (B). Thereafter, the custodian of Plaintiff's inmate trust account is directed to submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to the Court's financial deputy and the custodian of inmate trust accounts at Plaintiff's current facility to ensure compliance with the PLRA's requirements for payment of the filing fee.

## II. REQUEST TO APPOINT COUNSEL

On the initial page of his Complaint, Plaintiff states "I[']m also asking the court to appoint me a Lawyer" [Doc. 1 at 1]. The Federal Rules of Civil Procedure, which apply to this action, require a Party to make a request for a court order by filed a properly-captioned motion that "state[s] with particularity the grounds for seeking the order." *See* Fed. R. Civ. P. 7(b); *see also* E.D. Tenn. L.R. 7.1(b) ("Briefs shall include a concise statement of the factual and legal grounds which justify the ruling sought from the Court.). Plaintiff has not filed a proper motion, nor does the statement on page one of the Complaint provide the factual and legal grounds for his request [*See* Doc. 1 at 1]. So, the Court **DENIES** Plaintiff's request to appoint counsel.

## III. MOTION SEEKING TO CORRECT A MISIDENTIFICATION [Doc. 7].

Plaintiff indicates that he misidentified Defendant "Cody Webb" in his Complaint [*See* Docs. 1, 7]. The correct name of the intended Defendant is "Michael Webb" [*See* Doc. 7].

2

Plaintiff's request for correction is well-taken and will clarify the proper parties before the Court. *See* Fed. R. Civ. P. 21. So, the Court **GRANTS** the motion seeking to correct a misidentification [Doc. 7]. The Court substitutes "Michael Webb" for each mention of "Cody Webb" in the Complaint. The Court **DIRECTS** the Clerk to update the record in this case to reflect the proper Defendant as "Michael Webb."

## IV. SCREENING OF COMPLAINT

### A. Screening Standard

Under the PLRA, the Court must screen the Complaint and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). Thus, to survive an initial review, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

A claim is "facial[ly] plausib[le]" if the Complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Teamsters Local 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 83 F.4th 514, 524 (6th Cir. 2023) (quoting *Iqbal*, 556 U.S.at 678). Allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim that are not supported by specific facts are insufficient to

3

state a plausible claim for relief. *Iqbal*, 556 U.S. at 681. However, the Supreme Court has instructed that courts should liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than "formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### B. Relevant Allegations in the Complaint

When Plaintiff arrived at the Claiborne County Jail on February 6, 2025, he asked to use the telephone [Doc. 1 at 4]. After Plaintiff used the telephone, he stood in a cell doorway speaking to another inmate [*Id.*]. Defendant Corporal Michael Webb told Plaintiff, "Shut the fuck up" [*Id.*]. Plaintiff looked at Corporal Webb and "kept talking" [*Id.*]. Corporal Webb told Plaintiff, "F.A.F.O[.] (fuck around and find out)[,]" to which Plaintiff replied, "Oh[,] yeah" [*Id.*]. Corporal Webb "got in [Plaintiff's] face and repeated himself" [*Id.*]. Corporal Webb "went to take a step[,]" so Plaintiff "swung" out of "fear for [his] life" [*Id.*]. Plaintiff and Corporal Webb fought [*Id.*]. Corporal Webb picked Plaintiff "up over his head and body slammed [Plaintiff] on the ground" [*Id.*]. Plaintiff's hip was broken during the fight [*Id.*]. And Plaintiff was "knocked out while Corporal Webb got on top of [Plaintiff] and continued to punch [him]" [*Id.*]. Corporal Webb only stopped after another corporal "yelled at him" [*Id.*].

Corporal Webb dragged Plaintiff to his cell [*Id.*]. Plaintiff was subsequently transported to the hospital, where he had surgery the following day to put a rod and pins in his broken hip and femur [*Id.*]. Plaintiff was released from the hospital on February 10, 2025, and returned to the Claiborne County Jail [*Id.*]. He received a month of physical therapy, but then the "Claiborne County Jail refused and cancel[l]ed [his] other appointments" [*Id.* at 4-5]. Plaintiff's hip is still healing, and the cancellation of Plaintiff's physical therapy "h[i]nders [him] from get[ting] the proper treatment [and] movement back in [his] leg" [*Id.* at 5].

Plaintiff continues to experience hip pain, and he has developed night terrors and PTSD [*Id.*]. He walks with a severe limp and will "be disabled the rest of [his] life" [*Id.*]. Additionally, "Cpl. [Michael] Webb has had a history of striking other inmates[.] He even broke an old man's jaw after he broke [Plaintiff's] hip" [*Id.*].

Plaintiff filed this action against Corporal Michael Webb in his official and individual capacities [*Id.* at 1, 6; Doc. 7]. Plaintiff seeks $1,050,000 in monetary damages [Doc. 1 at 6].

### C. Analysis

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must establish that a "person" acting "under color of" state law deprived him of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983.

The Complaint does not disclose Plaintiff's custodial status [*See generally* Doc. 1]. But the Court takes judicial notice of publicly available inmate information on the Claiborne County Sheriff's Office website, which indicates that Plaintiff was a pretrial detainee at all relevant times.[1] As such, the protections of the Fourteenth Amendment apply to the claims. *See Lawler as next friend of Lawler v. Hardeman Cnty.*, 93 F.4th 919, 926 (6th Cir. 2024).

### 1. Use of Force

To state a claim against Corporal Webb for use of force, the Complaint must plausibly allege "that the force purposely or knowingly used against him [Plaintiff] was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015). "The reasonableness of the force turns on the facts and circumstances of the particular case, and '[a] court must make this determination from the perspective of a reasonable [official] on the scene, including what the

---

[1]*See* https://isoms.claiborneso.com/portal/Jail/Search; *see also Oak Ridge Env't Peace All. v. Perry*, 412 F. Supp. 3d 786, 810 n.6 (E.D. Tenn. 2019) ("Information taken from government websites is self-authenticating under Fed. R. Evid. 902, and courts may accordingly take judicial notice of the information found on these websites." (citations omitted)).

[official] knew at the time, not with the 20/20 vision of hindsight.'" *Howell v. NaphCare, Inc.*, 67 F.4th 302, 320 (6th Cir. 2023) (citing *Kingsley*, 576 U.S. at 397). Factors that "bear on the reasonableness or unreasonableness of the force used," *Kingsley*, 576 U.S. at 397, include:

> [T]the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Howell*, 67 F.4th at 320 (quoting *Kingsley*, 576 U.S. at 397).

Here, the Complaint concedes that Plaintiff ignored Corporal Webb's command to stop talking and Plaintiff "swung" at Corporal Webb when Corporal Webb confronted him [Doc. 1 at 4]. However, the Complaint also alleges that in response to Plaintiff's actions, Corporal Webb slammed Plaintiff to the ground and that Corporal Webb continued to strike Plaintiff after Plaintiff lost consciousness [*Id.*]. These further allegations, which the Court presumes are true at this point in the litigation, allow the Court to plausibly infer that Defendant Corporal Webb used excessive force against Plaintiff. Accordingly, Plaintiff's excessive force claim against Corporal Webb in his individual capacity **MAY PROCEED**.

However, suit against Corporal Webb in his official capacity is a suit against Claiborne County itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"). And "under [§] 1983, local governments are responsible only for 'their own illegal acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). Because the Complaint does not allege any facts that would permit the plausible inference that Plaintiff was subjected to excessive force due to an illegal official policy or custom of Claiborne County, the Court **DISMISSES** all official-capacity use-of-force claims against Corporal Webb. *See Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 708 (1978) (Powell, J., concurring) (explaining a municipality

can only be held liable for harms that result from a constitutional violation when that underlying violation resulted from "implementation of [its] official policies or established customs").

### 2. Physical Therapy

Plaintiff also complains that the "Claiborne County Jail refused and cancel[l]ed his other appointments for physical therapy" [Doc. 1 at 4-5]. But the Complaint does not contain any facts suggesting that Corporal Webb is responsible for the cancelled appointments [*See id.*]. Therefore, the Court **DISMISSES** this claim against Corporal Webb in his individual capacity. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted). The Complaint also fails to allege any facts suggesting that Plaintiff's physical therapy appointments were cancelled or refused pursuant to an illegal official policy or custom of Claiborne County [*See* Doc. 1]. Therefore, the Court **DISMISSES** any claim against Corporal Webb in his official capacity based on the provision of physical therapy. *See Graham*, 473 U.S. at 166; *Monell*, 436 U.S. at 708.

### IV. CONCLUSION

For the reasons above:

1. The Court **GRANTED** Plaintiff's Motion to proceed *in forma pauperis* [Doc. 4];

2. The custodian of Plaintiff's inmate trust account **MUST** submit the filing fee to the Clerk in the manner set forth above;

3. The Court **ORDERS** the Clerk to mail a copy of this Memorandum Opinion and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy;

4. The Court **DENIED** Plaintiff's request to appoint counsel;

5. The Court **GRANTED** the motion seeking to correct a misidentification [Doc. 7];

6. Plaintiff's excessive force claim against Defendant Michael Webb in his individual capacity **MAY PROCEED**;

7.     The Clerk **MUST** send Plaintiff a service packet (a blank summons and USM 285 form) for Defendant Webb;

8.     Plaintiff **MUST** complete the service packet and return it to the Clerk's Office within twenty-one (21) days of entry of this Memorandum Opinion and Order;

9.     At that time, the summons will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service, *see* Fed. R. Civ. P. 4;

10.    If Plaintiff fails to return the completed service packet timely, the Court will dismiss this action;

11.    Defendant Webb **MUST** answer or otherwise respond to the Complaint within twenty-one (21) days from the date of service.  If Defendant Webb fails to timely respond to the Complaint, it may result in entry of judgment by default against him;

12.    The Court **DISMISSED** all remaining claims; and

13.    Plaintiff **MUST** immediately inform the Court and Defendant or his counsel of record of any address changes in writing.  Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his address, to monitor the progress of the case, and to prosecute or defend the action diligently.  E.D. Tenn. L.R. 83.13.  Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

**SO ORDERED.**

**ENTER:**

s/ Katherine A. Crytzer
KATHERINE A. CRYTZER
United States District Judge

8